## JOHN LAKEMAN *v.* ROBERT MOORE.

By section 26, chapter 1, Revised Statutes, it is declared that the repeal of a statute shall not affect any act done, or right acquired, or accruing, or any suit or proceeding had or commenced in any civil case before the repeal takes effect. Section 4, chapter 147, requires the parties to a proposed marriage to cause their intention to be published, and section 12 of the same chapter gives a penalty against the minister or magistrate joining persons in marriage without a certificate from the town clerk of such publication. By the act of July 14, 1854, section 4, all acts and parts of acts inconsistent with that act are, in terms, repealed. The parties are required to cause notice of their intentions to be filed in the town clerk's office, and a penalty is prescribed for joining persons in marriage without a certificate from the town clerk that notice has been so filed. In a suit brought after the repeal took effect, for a penalty incurred under section 12, prior thereto — *held*, that section 12 was repealed, as being repugnant to the repealing act, but that the repeal was to be limited in its operation, by virtue of the provision of section 26, chapter 1, in the same manner as if the repealing act had contained a saving clause of all penalties previously incurred.

THE facts in the case sufficiently appear in the opinion of the court.

*G. & B. Wadleigh*, for the plaintiff.

*A. W. Sawyer*, for the defendant.

The opinion of the court was delivered by

SAWYER, J. This is an action of debt against the defendant, a justice of the peace, to recover the penalty prescribed by sec. 12, chapter 147, Revised Statutes, for joining in marriage a

minor son of the plaintiff, without a certificate from the town clerk of the publication of intention of marriage. The marriage was solemnized on the 29th day of June, 1854, and this action was commenced on the 8th day of September following.

The provisions of sec. 4, chapter 147, require the parties to a proposed marriage to cause their intentions to be published by the town clerk on three several public meeting days. By sec. 12 of the same chapter, a penalty of sixty dollars is given against the magistrate or minister joining persons in marriage without a certificate from the town clerk of such publication, to be recovered to the use of the parent, master or guardian of either of the parties to the marriage who shall first sue therefor.

On the 14th day of July, 1854, the act was passed entitled "An act to amend chapter 147, of the Revised Statutes, regulating marriages," which act took effect upon its passage. This act provides that all persons residing in this State, proposing to be joined in marriage, shall, before the marriage, cause notice of their intention to be entered in the office of the town clerk, and gives the same penalty for joining persons in marriage without a certificate from the town clerk that such notice has been entered in his office, as is prescribed by sec. 12 for joining in marriage without a certificate of intentions published; and repeals sec. 4, which requires intentions to be published, and all other acts and parts of acts inconsistent with the repealing act, but without repealing, in terms, sec. 12, and without a saving clause as to penalties previously incurred.

The questions arising in the case are — 1. Whether sec. 12, giving the penalty which is sought to be recovered in this suit, is repealed ; and, if so, 2. Whether such repeal is to operate as a bar to, or abrogation of, the right of action in a suit brought subsequent to the repeal for a penalty incurred previous to it.

The first question is, we think, free from all doubt. By the amendatory act of July 14, notice of intention of marriage, entered in the town clerk's office, is substituted for the publication of intentions required by sec. 4. This is clearly so in reference to the parties to the marriage. By the repeal of sec. 4 they are no

longer required to cause their intentions to be published, but, instead, to cause notice of them to be entered in the town clerk's office. This change is the whole object of these provisions of the amendatory act; and being thus clearly a substitute for the provisions of the Revised Statutes upon this subject, so far as the parties to the marriage are concerned, it cannot be held to be cumulative as to the magistrate officiating at the marriage. Such a construction would render the provisions of the act entirely nugatory, so far as they aim, by the express repeal of sec. 4, at relieving the parties to the marriage from the necessity of publishing their intentions, inasmuch as it would leave them subject to that necessity precisely as before the repeal, in order to protect the magistrate against the penalty prescribed by sec. 12, for joining them in marriage without a certificate of intentions published.

Such a result, it is very clear, could never have been intended by the Legislature. The provisions of sec. 12 must, therefore, be held to be repugnant to the amendatory act, and they would consequently be repealed by it, even without the insertion of the repealing clause.

It may well be doubted whether, in the absence of any statute provision limiting the effect and operation of such repeal, the right of action given by the repealed section to recover the penalty would not be wholly barred, unless, at least, the suit for the penalty had been commenced prior to the repeal. The repeal of a statute creating an offence, without a saving clause as to penalties previously incurred, has always been held to bar future prosecutions for past violations of the statute. This doctrine is based upon the ground that by the repeal the offence is gone. There remains no offence to be punished. The acts which, before the repeal, were a violation of law, are by it made innocent, and being purged of their unlawful character, they cannot consistently be subjected to punishment, as though they still continued to be criminal. Such repeal, however, is not to be permitted to annul or take away private, vested rights. To give it such effect would be to render it a retrospective law within the meaning of

the prohibitory clause of our State Constitution, and probably not less forbidden by the principles of sound constitutional law, even without such express prohibition.

But the right which is to be thus upheld against the repeal must be a vested right. The language used by *Parker*, C. J., in *Clark* v. *Clark*, 10 N. H. 380, is, that "if a right has become vested and perfect, a law which annuls or takes it away is retrospective ;" and this language is quoted with approbation by *Bell*, J., in *Willard* v. *Harvey & a.*, 4 Foster 344. A perfect vested right can be no other than such as is not doubtful, or depending on any contingency, but absolute, fixed and certain.

Without stopping to inquire whether until judgment there can be a vested right in a penalty given, not as damages, or in the nature of compensation, but merely for the purposes of punishment, it is quite clear that such right to the penalty in this case had not vested in the plaintiff before the repeal, for it was far from being absolute and certain. It depended entirely upon the contingency of the priority of his suit. If before suit brought it had become a perfect, vested right in him, as the parent, master, or guardian of one of the parties to the marriage, it had become equally a perfect, vested right in the parent, master, or guardian of the other party, if such there were. In truth, until fixed and made certain by suit commenced, it is to be regarded as no such right vested in either.

But however this may be, it is unnecessary to determine the question here, because there can be no doubt that by the provisions of sec. 26, chap. 1, Revised Statutes, the repealing act is to be considered as limited in its effect and operation, in the same manner and to the same extent as if it contained a saving clause of all penalties previously incurred. That section provides that the repeal of a statute shall in no case affect any act done, or any right accruing, accrued, acquired or established, or any suit or proceeding had or commenced in any civil case before the time when said repeal shall take effect.

It is obvious that the Legislature intended by this provision to limit repealing acts to a strictly prospective operation. All

past proceedings are to stand as before the repeal, unaffected by it. The act which, done before, was by the law then in force an offence, and to be followed by the consequences of a liability to a penalty or forfeiture, to be recovered in a civil suit — and this is such a suit — remains in its character and consequences such as it was before the repeal. Rights accruing under the act repealed are not to be arrested or interrupted by the repeal, but are to be preserved and matured by virtue of the act unrepealed as to them, in the same manner as though it continued in force for all purposes.

That it is competent for the Legislature by a general law thus to prescribe a rule of construction, to be applied to future acts of repeal, cannot be questioned; and it is undoubtedly equally competent for a subsequent Legislature to annul it entirely by a repeal, or to modify it or limit its application, at their pleasure, by enacting to that effect. But in the absence of such statutory enactments, modifying the rule or limiting its application, all repealing acts subsequently passed must be understood to have been enacted with special reference to it, as the rule thus prescribed for their construction.

Thus considered, the repealing act in this case must be held to be limited in its effect and operation to proceedings subsequent to its passage, leaving the past untouched. The penalty which had been incurred by the defendant previous to the repeal is not taken away by the repeal, but may be recovered in the same manner as though the repealing act had not been passed; and according to the provisions of the case there must be an order to the Court of Common Pleas for

*Judgment for the plaintiff.*